Lopez, J.
The plaintiff, Ann Busi, seeks judicial review pursuant to G.L.c. 30A, § 14 of a decision of the Contributory Retirement Appeal Board (CRAB) issued on February 26, 1992. The plaintiff contends that CRAB’s decision denying retirement benefits of her deceased ex-husband to their mentally incapacitated son is against the weight of the evidence and contrary to law. After review of the record and the parties’ briefs, this court reverses, in part, the decision of CRAB.
BACKGROUND
Vincenzio Busi (Vincenzio) worked as a Malden Police Officer until he retired due to a back condition. He began receiving accidental disability retirement benefits in 1972.
Vincenzio was married to the plaintiff from 1953 until 1965 when they divorced. They had two children, the younger of which, John, suffered from incapacitating mental illness, from the age of two until his death at the age of thirty-three.
Vincenzio was remarried in December 1974 to Irma and later adopted Irma’s two young children. He removed the plaintiffs name as beneficiary on the membership enrollment form of the Malden Retirement System and named Irma as beneficiary.
Vincenzio and the plaintiff shared joint physical custody of their two children. When John was living with his mother, Vincenzio would send monthly checks to the plaintiff for the costs of caring for John.
John turned eighteen on August 26, 1974. His father died six years later on August 4, 1980. At the time of his *285 death, Vincenzio was married to and living with Irma. John died nine years after his father in July 1989.
On April 11, 1988, the plaintiff wrote a letter to the Malden Retirement Board seeking benefits on behalf of her son, John. The Board denied any benefits to John on September 1, 1988. The plaintiff appealed the decision to CRAB. The primary issues presented to CRAB, and to this court on appeal, involve entitlement to benefits under G.L.c. 32, §7(2)(iii) and G.L.c. 32, §12B and whether those benefits should be paid to John’s estate or to Vincenzio’s estate.
The Division of Administrative Law Appeals (DALA) addressed these issues in a decision issued on December 4, 1990. The administrative magistrate concluded that the provisions of G.L.c. 32, §7(2)(iii) entitle Vincenzio’s estate to receive an additional pension allowance for the care of John from the time of John’s eighteenth birthday in 1974 until Vincenzio’s death in 1980. The magistrate further determined that John’s estate was entitled to receive a survivor’s allowance pursuant to G.L.c. 32, §12B for the nine years after his father’s death in 1980 and before John’s death in 1989.
The CRAB decision issued on February 6, 1992, adopted DALA’s recommendation with respect to the payment of benefits to Vincenzio’s estate under G.L.c. 32, §7(2)(iii). However CRAB failed to adopt DALA’s recommendation with respect to G.L.c. 32, §12B, finding that John’s mother was not Vincenzio’s surviving spouse according to the express language of the statute. This court affirms CRAB’s award of benefits under Section 7(2) (iii) and reverses CRAB’s denial of benefits under Section 12B.
DISCUSSION
When considering an appeal pursuant to G.L.c. 30A, this court may set aside a CRAB decision that is unsupported by substantial evidence or based on an error of law. Retirement Board of Brookline v. Contributors Retirement Appeal Board, 33 Mass.App.Ct. 489, 491 (1992). Here, the decision of CRAB with respect to Section 12B is based on a construction of G.L.c. 32 which is contrary to the clear intent of the statute and defeats its very purpose.
A. G.L.c. 32, §7(2) (iii)
First, the court addresses the award of benefits to Vincenzio’s estate under Section 7(2)(iii). The statute allows a “retired member” to receive additional accidental disability retirement for a mentally incapacitated child over the age of eighteen. G.L.c. 32, §7(2)(iii). Therefore, CRAB properly awarded benefits to Vincenzio’s estate, and not to the estate of John, in accord with the statute.
B. G.L.c. 32, §12B
Section 12B is designed to provide survival benefits to the mentally incapacitated child during his lifetime. The statute specifically directs payment to the spouse “for the benefit of all such [incapacitated] children.” G.L.c. 32, §12B. Such intent to care for a member’s incapacitated child is additionally evident from the provision in the statute which ensures that the child continues to receive benefits, even in the event of the remarriage of the surviving spouse, by the appointment of a guardian.
Here the spouse, as defined in the statute, is Irma.[1] However, the intent of the statute could not be effected by paying money to Irma, who was not John’s mother and did not care for John after her husband’s death. A strict reading of the statute would unfairly deny John any benefits simply because he was Vincenzio’s son from a former marriage.[2] Authoritative administrative constructions of statutes should be given the deference to which they are entitled, but absurd results are to be avoided. U.S. v. Turkette, 452 U.S. 576, 580 (1981); Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 643 (1978). See also Massachusetts Hospital Assoc, Inc. v. Dept. of Medical Security, 412 Mass. 340, 346 (1992) (incorrect interpretation of statute not entitled to deference). While the court must defer to the agency’s interpretation of law, such deference does not equate with blind faith. The court is obliged to accept the administrative construction of a statute only so far as it is reasonable and consistent with legislative intent. North American Industries, Inc. v. Feldman, 722 F. 893, 898 (1st Cir. 1983).
CRAB’s narrow interpretation of the statute contemplates an unreasonable result and does not take into consideration the intended policy of the statute which is to provide benefits to all qualifying children of members. The court cannot fathom that the legislature intended to disadvantage children who were born to unwed parents or to parents who were married but subsequently divorced and reward only those children who were bom to the members’ spouse at the time of the members’ death. Such a result is both illogical and absurd.
ORDER
It is therefore ORDERED that the decision of CRAB dated February 6, 1992 be affirmed and reversed as follows:
1) Payment of benefits to the estate of Vincenzio Busi in accordance with G.L.c. 32, §7(2) (iii) is affirmed;
2) Denial of benefits under G.L.c. 32, §12B is reversed and the Malden Retirement Board is ORDERED to pay survivor benefits to the estate of John Busi for the period from August 4, 1980 (Vincenzio’s death) to July 1989 (John’s death).

 Spouse is defined as one who has been married to the member for at least one year and was living with the member at the time of his death.

 Much of G.L.c. 32 fails to address the logistical complications of awarding benefits to a members’ child from a former marriage. The court expresses its amazement at such a glaring oversight in this era where divorce is so prevalent and suggests that the legislature bring itself into modernity.